UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| REBECCA A. ROOT, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| vs. ) | No. 1:15-cv-01771-JMS-DKL |
| ) | |
| CAROLYN W. COLVIN, *Acting* ) | |
| *Commissioner of the Social Security* ) | |
| *Administration*, ) | |
| ) | |
| *Defendant*. ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Rebecca A. Root applied for disability and disability insurance benefits under the Social Security Act ("SSA") on February 23, 2013, alleging an onset date of January 7, 2011. [Filing No. 8-2 at 17; Filing No. 8-5 at 6.] Her claim was denied initially and on reconsideration, and a hearing was held before Administrative Law Julia Gibbs on June 5, 2014. [Filing No. 8-2 at 30-54.] On June 19, 2014, the ALJ issued an opinion concluding that Ms. Root was not disabled as defined by the Social Security Act. [Filing No. 8-2 at 17-25.] The Appeals Council denied her request for review on October 1, 2015, making the ALJ's decision the Commissioner's final decision subject to judicial review. [Filing No. 8-2 at 2.] Ms. Root filed this civil action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c) on November 12, 2015, asking this Court to review her denial of benefits. [Filing No. 1.]

**I.
STANDARD OF REVIEW**

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind

1

of inability, namely, an inability to engage in any substantial gainful activity. Second it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists to support the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [her] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [she] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [she] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Ms. Root was forty-three years old at the time that she applied for social security benefits. [Filing No. 8-5 at 6.] She has a ninth grade education, [Filing No. 8-6 at 7], and has performed past relevant work as food service manager and fast food manager, [Filing No. 8-2 at 23].[1]

---

[1] Both parties provided a detailed description of Ms. Root's medical history and treatment in their briefs. [Filing No. 10; Filing No. 15.] Because that discussion implicates sensitive and otherwise confidential medical information concerning Ms. Root, the Court will simply incorporate those facts by reference herein and only detail specific facts as necessary to address the parties' arguments.

3

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Ms. Root is not disabled.  [Filing No. 8-2 at 17-25.]  The ALJ found as follows:

- At Step One, the ALJ found that Ms. Root has not engaged in substantial gainful activity since January 7, 2011, the date of the alleged onset date.  [Filing No. 8-2 at 19.]

- At Step Two, the ALJ found that Ms. Root has the following severe impairment: fibromyalgia.  [Filing No. 8-2 at 19.]

- At Step Three, the ALJ found that Ms. Root does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  [Filing No. 8-2 at 21.]

- At Step Three but before Step Four, the ALJ found that Ms. Root has the RFC to "perform light work as defined in 20 CFR 416.967(b), except she is limited to unskilled work with a 45-minute sit/stand option in a setting with access to bathroom facilities." [Filing No. 8-2 at 21.]

- At Step Four, the ALJ found that Ms. Root is unable to perform her past relevant work. [Filing No. 8-2 at 23.]

- At Step Five, the ALJ considered Ms. Root's age, education, work experience, and RFC and found that there are jobs that exist in sufficient numbers in the national economy that Ms. Root can perform, including price marker, routing clerk, and laundry sorter.  [Filing No. 8-2 at 24.]

Ms. Root asked the Appeals Council to review the ALJ's decision, but that request was denied on October 1, 2015, making the ALJ's decision the Commissioner's final decision subject

to judicial review. [Filing No. 8-2 at 2.] Ms. Root filed this civil action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c), asking this Court to review her denial of benefits. [Filing No. 1.]

### III.
### DISCUSSION

Ms. Root raises three issues on appeal, and the Court will address them in the following order: (1) whether the ALJ erred when she failed to discuss the impact of Ms. Root's migraine headaches and Clostridium Difficile ("C. Difficile") infection[2]; (2) whether the ALJ erred in making an adverse credibility determination; and (3) whether the ALJ failed to consider whether Ms. Root's fibromyalgia medically equals one of the listed impairments. [Filing No. 10 at 10.]

**A. Migraine Headaches and C. Difficile Infection**

Ms. Root argues that evidence in the record and her testimony during the hearing demonstrate that she suffers from sinus and migraine headaches. [Filing No. 10 at 26.] She claims that despite this, the ALJ failed to consider whether this evidence supports "the possibility of equaling a Listing" or whether the migraines impact her ability to work. [Filing No. 10 at 28-29.] Ms. Root further argues that the ALJ was "playing doctor" when she determined that Ms. Root's C. Difficile infection is not severe. [Filing No. 10 at 29-30.] According to Ms. Root, the ALJ failed to consider the "combined effects of [Ms.] Root's numerous impairments." [Filing No. 10 at 31.] She further claims that even though the ALJ found that the RFC requires access to bathroom facilities due to her infection, there is "no specific finding regarding 'the necessary access to bathroom facilities.'" [Filing No. 10 at 31.]

---

[2] C. Difficile is a type of intestinal bacterium that can grow out of control and attack the lining of the intestines, which cause symptoms like watery diarrhea and abdominal pain or tenderness. WebMD, Digestive Disorders Health Center, http://www.webmd.com/ibd-crohns-disease/ulcerative-colitis/default.htm (last visited August 22, 2016).

In response, the Commissioner asserts that the ALJ did consider Ms. Root's symptoms of "intermittent diarrhea and stiffness" in connection with the RFC. [Filing No. 15 at 14.] The Commissioner also claims that the ALJ "primarily relied on the objective examination findings of Dr. Rice and Dr. Lautzenheiser, the examining and treating physicians," and that she also considered Ms. Root's medical treatment history, use of pain relievers, and her activities of daily living when assessing how her symptoms limited her functioning. [Filing No. 15 at 15-16.]

In reply, Ms. Root points out that the Commissioner does not respond to her arguments regarding her migraine headaches, the ALJ playing doctor when indicating that the C. Difficile was not severe, and the frequency of her bathroom breaks as a result of her C. Difficile infection. [Filing No. 16 at 2-3.]

The Court "will uphold the ALJ's decision if it is supported by substantial evidence, that is, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (citing *Richardson v. Perales*, 402 U.S. 389 (1971); *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013)). The Court will not reweigh the evidence or substitute its own judgment for that of the ALJ, but it will examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions sufficient to allow the Court to assess the validity of the agency's ultimate findings and afford meaningful judicial review. *Moore*, 743 F.3d at 1121 (citing *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *Pepper*, 712 F.3d at 362; *Villano*, 556 F.3d at 562. A decision that lacks adequate discussion of the issues will be remanded. *Moore*, 743 F.3d at 1121.

As Ms. Root points out and the Commissioner concedes by failing to respond, the record contains evidence of Ms. Root's medical history with "migraines" or "headaches" that the ALJ failed to consider.  [*See* Filing No. 8-6 at 51 (noting that Ms. Root takes medication for her headaches); Filing No. 8-7 at 8 (stating that Ms. Root gets "frequent sinus headaches"); Filing No. 8-8 at 34 (citing "migraines" as part of medical history); Filing No. 8-8 at 53 (reporting that Ms. Root was experiencing "migraines today"); Filing No. 8-8 at 63 (citing again "migraines" as part of medical history).]  Ms. Root also testified at the hearing that she experiences migraines a couple of times a week.  [Filing No. 8-2 at 48.]  Nowhere in the decision, however, does the ALJ discuss Ms. Root's migraine headaches.  This is troubling because if debilitating enough, migraines could be part of a severe combination of impairments that could result in a finding of disability or could require further restrictions in the RFC.  *See Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (finding that although the claimant's headaches were part of the severe combination of impairments at Step Two, the ALJ failed to build a logical bridge at Step Four when he implied that the claimant "did not actually suffer migraines. . . .").  Given that there is no discussion of Ms. Root's headaches or migraines in the ALJ's decision, the Court cannot speculate that the ALJ actually considered this evidence or her testimony.  *Moore*, 743 F.3d at 1124 ("The error here is the failure to address all of the evidence and explain the reasoning behind the decision to credit some evidence over the contrary evidence, such that we could understand the ALJ's logical bridge between the evidence and the conclusion.  By failing to even acknowledge that evidence, the ALJ deprived us of any means to assess the validity of the reasoning process.").

In regards to Ms. Root's C. Difficile infection, the ALJ found that Ms. Root's condition did not qualify as a severe medically determinable impairment under Step Two.  [Filing No. 8-2 at 20-21.]  She generally stated that Ms. Root "has a history of chronic colitis and intermittent

7

'flares' of diarrhea," that a CT scan of the abdomen was normal, that a biopsy of her intestine "revealed no pathological diagnosis," and that she has "conservatively treated diarrhea with antibiotics . . . ." [Filing No. 8-2 at 20-21.] This description does not take into account evidence that is contrary to her conclusion, as Ms. Root contends.[3] For instance, she failed to take into account that there are times when Ms. Root's diarrhea had worsened and other times when it had improved, and that she had to change medications various times because of experiencing different side effects. [*See* Filing No. 8-8 at 9; Filing No. 8-8 at 13; Filing No. 8-8 at 28-33; Filing No. 8-8 at 51; Filing No. 8-8 at 53; Filing No. 8-8 at 55; Filing No. 8-8 at 59; Filing No. 8-8 at 59.] Moreover, while the ALJ gave an analysis of the objective medical findings, the ALJ did not consider the physician's note that "testing records" of her diarrhea may be difficult to interpret when she is on medication. [Filing No. 8-8 at 60.] Lastly, the ALJ failed to take into account Ms. Root's testimony that she has "flare ups" of diarrhea every week. [Filing No. 8-2 at 47.] Even if this evidence does not suggest that Ms. Root has a severe impairment, the ALJ must still consider it to determine any resulting functional limitations. *See* SSR 96-3p ("A determination that an individual's impairment(s) is not severe requires a careful evaluation of the medical evidence that describe the impairment(s)" in order to make an informed judgment about the severity of the impairment).

The ALJ also failed to discuss Ms. Root's C. Difficile infection in her RFC determination. "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe . . . ." *Villano*, 556 F.3d at

---

[3] Under the argument section of the opening brief, Ms. Root does not identify what evidence is contrary to the ALJ's conclusion. The Court, however, was able to locate the citations of evidence regarding this issue under the background section of her opening brief, which made the review of the record cumbersome for the Court.

563 (citing SSR 96-8p; *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003)). Under the RFC determination, the ALJ's sole statement related to her C. Difficile infection is that Ms. Root would need to work in a setting "with access to bathroom facilities." [Filing No. 8-2 at 21.] The Court assumes that this is due to Ms. Root's diarrhea as a result of her C. Difficile infection, but it cannot be sure since the ALJ provides no further explanation. Thus, the ALJ erred when she failed to properly consider Ms. Root's C. Difficile infection.

Accordingly, the Court finds that the ALJ erred by not considering the evidence regarding Ms. Root's migraine headaches and C. Difficile infection.

### B. Adverse Credibility Determination

Ms. Root claims that there are several flaws with the ALJ's adverse credibility determination. First, she argues that the ALJ "fail[ed] to articulate [her] consideration of each of the six factors enumerated in" Social Security Ruling ("SSR") 96-7p. [Filing No. 10 at 19.] She claims that the ALJ used meaningless boilerplate to state that she is "not *entirely* credible," but failed to provide further clarification. [Filing No. 10 at 19 (original emphasis).] Ms. Root argues that the ALJ indicated that she found "no definite limitations in the record and that [Ms.] Root is able to perform almost all of her activities of daily living independently," despite evidence in the record that reflects her difficulty in doing household chores and "bad days with pain level of about seven or eight." [Filing No. 10 at 21-23.] Ms. Root argues that the ALJ also failed to include a discussion regarding the side effects of taking "powerful medications." [Filing No. 10 at 24-25.]

In response, the Commissioner argues that the ALJ took into consideration "objective medical evidence, treatment, physician's opinions, and observations, as well as Plaintiff's own statements about her limitations," and that she gave significant weight to Dr. Rice's findings. [Filing No. 15 at 11-12.] The Commissioner points out that Ms. Root does not challenge Dr. Rice's

9

findings, and claims that the ALJ adequately explained the basis of her RFC findings. [Filing No. 15 at 14.] She claims that the ALJ provided adequate accommodations for her complaints of diarrhea and stiffness and that Ms. Root does not point to any other "medical opinion evidence" that shows any other restrictions. [Filing No. 15 at 13-14.]

In reply, Ms. Root argues that the Commissioner "mostly repeats the ALJ's decision while asserting that it is soundly written" and fails to respond to her arguments regarding her "good and bad days" and her side effects due to medication usage. [Filing No. 16 at 2.]

Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft*, 539 F.3d at 678, this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska*, 454 F.3d at 738. The absence of objective evidence cannot, standing alone, discredit the presence of substantive complaints, *Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010), but when faced with evidence both supporting and detracting from a claimant's allegations, "the resolution of competing arguments based on the record is for the ALJ, not the court[,]" *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002). In "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." *Prochaska*, 454 F.3d at 738.

Under the RFC analysis, the ALJ discusses Ms. Root's subjective complaints in one paragraph. [*See* Filing No. 8-2 at 21-22.] Thereafter, the ALJ states that the objective evidence "does not substantiate [Ms. Root's] allegations of disabling functional limitations," and goes on to recite the objective medical findings. [Filing No. 8-2 at 22.] The ALJ does not, however, identify

10

what subjective complaints are not corroborate by the objective evidence, and simply concludes that "there are no definite limitations in the record." [Filing No. 8-2 at 23.]

As Ms. Root points out, the ALJ fails to provide a discussion of Ms. Root's subjective complaints using the factors of SSR 96-7p. For example, one of the factors provides that "[i]t is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that the 'allegations are (or are not) credible.' . . . The determination or decision must contain specific reasons for the finding on credibility . . . and must be sufficiently specific to make clear . . . the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. Thus, simply reciting her subjective complaints and using boilerplate language to discredit them without any reasoning is an insufficient analysis and constitutes reversible error.

Moreover, although the ALJ acknowledges that Ms. Root experiences some pain, the ALJ fails to incorporate the level of pain Ms. Root experiences due to her fibromyalgia or C. Difficile infection. In discussing her activities of daily living, the ALJ indicates that Ms. Root "engages in independent personal care, cooks, does laundry, plays with her dogs, [] shops in stores[,] . . . is easily fatigued and must nap after being up for three hours." [Filing No. 8-2 at 19-20.] Then, the ALJ concludes under the RFC analysis that Ms. Root is able to perform almost all of her activities independently. [Filing No. 8-2 at 23.] The Court is not clear if the ALJ considered Ms. Root's pain with respect to her fibromyalgia or C. Difficile infection because there is no discussion regarding symptoms that are cause by those conditions. There is evidence in the record that Ms. Root does household chores with difficulty, [Filing No. 8-8 at 68], and that her pain differs every day with four out of seven bad days involving a pain level of about seven or eight, [Filing No. 8-

11

2 at 46]. Lastly, as Ms. Root points out, the ALJ provides no discussion regarding Ms. Root's side effects from taking medication.

Accordingly, because the ALJ failed to sufficiently analyze Ms. Root's subjective complaints, her level of pain, and her side effects from medication, the decision requires remand.

### C. Listing

Ms. Root argues that the ALJ omitted any type of explanation regarding "what Listings were even considered" or "what evidence was considered in light of the Listings." [Filing No. 10 at 12-13.] She claims that that the ALJ "dismissed the possibility of [Ms.] Root's fibromyalgia meeting or equaling any Listing criteria 'in two sentences,'" which she argues does not comply with SSR 12-2p. [Filing No. 10 at 13.] She further contends that the ALJ should have obtained an updated medical opinion from a medical expert to determine whether Ms. Root's impairments equal a listing. [Filing No. 10 at 16.]

In response, the Commissioner argues that when evaluating the severity of her impairments, the ALJ considered Ms. Root's fibromyalgia impairment in the context of SSR 12-2p and her mental impairments according to Listing 12.00. [Filing No. 15 at 8 (citing Filing No. 8-2 at 19-21).] The Commissioner argues that the ALJ found no other medically determinable impairments and therefore Ms. Root could not be found to equal a listing based on fibromyalgia. [Filing No. 15 at 9.] The Commissioner further contends that Ms. Root does not explain "how the combined effect of her fibromyalgia symptoms would medically equal a listing" and that "the only physicians who assessed this issue found that [Ms. Root's] impairments did not meet or medically equal the criteria of any listing. . . ." [Filing No. 15 at 10.]

In reply, Ms. Root argues that the Commissioner makes several post hoc justifications that were not considered by the ALJ. [Filing No. 16 at 1.]

If a claimant has an impairment that meets or equals an impairment found in the Listing of Impairments, she is presumptively eligible for benefits. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015); 20 C.F.R. § 404.1520(d). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Minnick*, 775 F.3d at 935 (quoting *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir.2004)). A claimant may also satisfy a listing by showing that her impairment is accompanied by symptoms that are equal in severity to those described in the listing. *Minnick*, 775 F.3d at 935; 20 C.F.R. § 404.1526. A finding of medical equivalence requires an expert's opinion on the issue. *Minnick*, 775 F.3d at 935 (citing *Barnett,* 381 F.3d at 670).

It is well established that fibromyalgia has the capacity to be a completely disabling condition. See *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996). SSR 12-2p provides guidance on how to evaluate evidence of fibromyalgia in a disability claim. First, the ALJ must determine whether the claimant has a medically determinable impairment of fibromyalgia. SSR 12-2p. Here, the ALJ found under Step Two that Ms. Root's fibromyalgia is a severe medically determinable impairment. [Filing No. 8-2 at 19.] Second, since fibromyalgia is not a listed impairment, the Commissioner must determine whether Ms. Root produced objective medical findings that demonstrate that fibromyalgia medically equals the criteria of any of the listings, or whether fibromyalgia in combination with at least one other medically determinable impairment medically equals any of the listings. SSR 12-2p.

Under Step Three, the only explanation that the ALJ provides is that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. . . ." [Filing No. 8-2 at 21.] This is inadequate because the Court is unable to determine what evidence the ALJ considered in order to support her conclusion, and

as Ms. Root points out, whether the ALJ considered Ms. Root's fibromyalgia at all. Thus, on remand, the ALJ must consider whether Ms. Root's fibromyalgia medically equals any of the listings by itself or in combination with at least one other medically determinable impairment, such as her migraine headaches or her C. Difficile infection as discussed above.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Ms. Root benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four) as detailed above. Final judgment will issue accordingly.

Date: August 30, 2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov